UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY CUTTING,

    Plaintiff,

v.                                      Case No. 07-14422
                                      Honorable Patrick J. Duggan

FERROUS PROCESSING
AND TRADING CO.,

    Defendant.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on December 1, 2008.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

Plaintiff filed this lawsuit on October 17, 2007, alleging that Defendant terminated her employment in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654. In her complaint, Plaintiff asserts that Defendant interfered with her rights under the FMLA (Count I) and retaliated against her for engaging in activity protected under the FMLA (Count II). Presently before the Court is Defendant's motion for summary judgment, filed September 15, 2008. Plaintiff filed a response to Defendant's motion on October 10, 2008, in which she moves for summary judgment with respect to her retaliation claim. Defendant filed a reply brief on October 24, 2008, and on November 19, 2008, this Court held a motion hearing. For the reasons that follow, the

Court denies Defendant's motion for summary judgment and Plaintiff's request for summary judgment with respect to her retaliation claim.

## I. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence

presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

## II. Factual Background

Plaintiff began her employment with Defendant on or about October 24, 1997. In July 2005, Plaintiff was pregnant with her second child and, on or around July 22, she applied for and was granted FMLA leave. This leave is the subject of the present lawsuit.

On July 22, Plaintiff informed Defendant that her doctor had taken her off of work due to complications with her pregnancy and she began her leave. Plaintiff gave birth in early August 2005. Originally Plaintiff intended to take only six weeks of FMLA leave following her child's birth. (Pl.'s Resp. Ex. A at 47.) However, because Plaintiff also needed to undergo gallstone surgery on September 8, 2005, she telephoned her supervisor, LaTisha Terry, and informed her that she would be taking an additional six weeks of leave. (*Id*. at 54-56.) Plaintiff testified during her deposition in this case that during this phone conversation, she informed Ms. Terry that she would not be returning until October 24, 2005, and Ms. Terry "said that was fine, there was no problem with that, . . ." (*Id*. at 55-56, 78.)

On Friday, October 14, 2005, Plaintiff called Ms. Terry and informed her that she had decided to return to work early and that she would be back the next work day, Monday, October 17. Plaintiff's doctor who performed her gallstone surgery, Dr. Wallace Arneson, provided Plaintiff with a note releasing her to return to work on October 17. When Plaintiff spoke with Ms. Terry, Ms. Terry advised her to see Marsha

Moss, the Director of the Human Resources Department, when she reported for work on Monday.[1] Apparently, Defendant already had decided to terminate Plaintiff's employment based on its view that the twelve weeks of FMLA leave to which she was entitled expired Thursday, October 13, and that Plaintiff therefore was required to return to work on Friday, October 14, but failed to do so. (Def.'s Mot. Ex. 7 at 74.)

In fact, Defendant had sent a letter to Plaintiff on Thursday, October 13, indicating that her time off work ceased to be covered by the FMLA as of October 13 and that because she was not able to return to work, her position was terminated.[2] (Pl.'s Resp. Ex. I.) Defendant sent this letter to Plaintiff via certified mail. (*Id*.) Plaintiff did not receive the letter until October 21.

Plaintiff reported to work on Monday October 17. As Ms. Terry had directed, Plaintiff went to speak with Ms. Moss. At that time, Ms. Moss informed Plaintiff that she was terminated. When Plaintiff was terminated, she had 38.07 hours of vacation time

---

[1]Ms. Moss is the Director of Human Resources for Soave Industries– the legal entity that wholly owns Defendant and a number of other companies– and she oversees human resources for Soave and its subsidiaries. Defendant goes to great lengths to show that Plaintiff was the human resources representative at the facility where she worked and therefore was knowledgeable about leave under the FMLA and Defendant's FMLA policies. (*See, e.g.,* Def.'s Mot. at 6.) Defendant also devotes considerable time in its pleadings to demonstrate that Plaintiff completed the FMLA paperwork to effectuate her FMLA leave, including those portions to be completed by the employer and the effective date of her leave. Plaintiff disputes Defendant's assertions. In this Court's view, however, none of these facts– whether disputed or not– are dispositive of the parties' summary judgment motions.

[2]As Plaintiff argues, Defendant apparently "jumped the gun" by processing her termination and sending this letter the day before she was due back to work.

remaining. (Pl.'s Resp. Ex. N.)

## III. Applicable Law and Analysis

The FMLA guarantees eligible employees twelve weeks of unpaid leave each one-year period following the occurrence of certain qualifying events: a disabling health problem; a family member's serious illness; or the arrival of a new child. 29 U.S.C. § 2612(a)(1). The statute further provides that "[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave . . . for any part of the twelve-week period of [FMLA] leave." 29 U.S.C. §§ 2612(d)(2)(A) & (B). The statute mandates that, upon the employee's timely return, the employer must reinstate the employee to his or her former position or an equivalent position. 29 U.S.C. § 2614(a)(1).

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided under [the statute]." 29 U.S.C. § 2615(a)(1). The Act also makes it "unlawful for any employer to discharge or in any other manner to discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). Based on this language, the Sixth Circuit Court of Appeals recognizes two distinct theories of recovery under the FMLA: "(1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 555 (6th Cir. 2006) (quoting *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004)). As indicated previously, Plaintiff

advances both theories of recovery.

To prevail under the entitlement theory, Plaintiff must demonstrate that (1) she was an eligible employee; (2) Defendant was an employer as defined by the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave Defendant notice of her intention to take leave; and (5) Defendant denied Plaintiff the FMLA benefits to which she was entitled. *Coker v. McFaul*, 247 Fed. App'x 609, 616-17 (6th Cir. 2007) (citing *Killian*, 454 F.3d at 556). There is no dispute with respect to the first four elements of Plaintiff's entitlement claim. The only issue is whether Defendant interfered with FMLA benefits to which Plaintiff was entitled.

Defendant seeks summary judgment with respect to Plaintiff's entitlement claim based on the Sixth Circuit's pronouncement that an employer can avoid liability if the employee was incapable of returning to work at the end of the 12-week leave period allowed under the FMLA. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 509 (6th Cir. 2006) (citing *Cehrs v. N.E. Ohio Alzheimer's Research Ctr.*, 155 f.3d 775, 784-85 (6th Cir. 1998)). Defendant maintains that there is no genuine issue of material fact that Plaintiff was incapable of returning to work at the conclusion of her 12-weeks of allotted FMLA leave. In examining whether Plaintiff was able to return to work when her FMLA leave expired, this Court must consider "all of the medical evidence bearing on [Plaintiff's] ability to timely return, not just the evidence available at the time of the adverse employment action." *Id*. at 512. This is because an employer's motive for its adverse employment decision is irrelevant with respect to an entitlement claim, whereas it

6

is relevant in analyzing a retaliation claim. *Id*.

According to Defendant, Plaintiff's FMLA leave undisputedly began on July 22, 2005, and therefore expired on October 13, 2005. Defendant claims that the only evidence "bearing on Plaintiff's ability to return to work demonstrates conclusively that Plaintiff was unable to return to work on October 14, 2005." (Def.'s Br. in Supp. of Mot. at 10.) Defendant relies on the following evidence: (1) an "Attending Physician Statement" that Dr. Arneson prepared following Plaintiff's gallstone surgery, in which Dr. Arneson indicates that Plaintiff will not be able to return to work until October 24, 2005, and (2) Dr. Arneson's note of October 14, 2005, releasing Plaintiff to return to work only on October 17, 2005. (*Id*. Exs. 9, 10.)

In response to Defendant's motion, however, Plaintiff demonstrates a genuine issue of material fact with regard to her ability to return to work when her FMLA leave expired. Specifically, Plaintiff points to her deposition in this case, where she testified that she could have returned to work on October 14, 2005, if she had been told that Defendant considered that her FMLA leave expired the previous day. (Def.'s Reply Ex. 1 at 65-66.) Further, Plaintiff provides Dr. Arneson's affidavit in which he states that Plaintiff was capable of returning to work as early as October 10, 2005. (Pl.'s Resp. Ex. L ¶ 6.) Dr. Arneson explains that he only returned Plaintiff to work on October 17, 2005, because he was aware that Plaintiff recently gave birth and also was on leave to care for her newborn. (*Id*. ¶¶ 7-8.)

Based on Plaintiff's evidence, this case is distinguishable from *Edgar*– on which

Defendant relies– and is more akin to the two cases that the *Edgar* court found distinguishable: *Mendoza v. Micro Electric, Inc.*, No. 02 C 8005, 2005 WL 331585 (N.D. Ill. Feb. 8, 2005) (unpublished) and *Viereck v. City of Gloucester City*, 961 F. Supp. 2d 860 (D.N.J. 1997). As the Sixth Circuit indicated in *Edgar*, "[i]n those two cases, the plaintiffs testified unequivocally that they would have returned to work by the end of the leave period if they had known that their jobs were at stake, and the employers could not demonstrate that the employees were medically unable to resume their positions." *Edgar*, 443 F.3d at 510. The plaintiff in *Edgar*, in comparison, failed to point to any proof contradicting his doctors' testimony that he could not return to work until well after his FMLA-leave expired. *Id*. As the evidence shows that Plaintiff was not "indisputably unable to return to work at the conclusion of [her] 12-week period of [FMLA] leave," *id*. at 507, the Court concludes that Defendant is not entitled to summary judgment.

Plaintiff seeks summary judgment with respect to her retaliation claim, asserting that because she exercised her right to leave under the FMLA, Defendant treated her differently than it treats other, similarly situated employees for having one unexcused absence. Plaintiff does not identify direct evidence demonstrating that Defendant terminated her because she exercised her FMLA rights. Therefore, to prevail on her claim, Plaintiff must demonstrate the following: (1) she availed herself of a protected right under the FMLA; (2) she suffered an adverse employment action, and (3) there is a causal connection between the exercise of her rights under the FMLA and the adverse employment action. *Edgar*, 443 F.3d at 508 (citing *Skrjanc v. Great Lakes Power Serv.*

8

*Co.*, 272 F.3d 309, 314 (6th Cir. 2001)).  If Plaintiff satisfies these three elements, the burden shifts to Defendant to proffer a legitimate, nondiscriminatory rational for its decision to terminate Plaintiff.  If Defendant successfully demonstrates a legitimate reason for its decision, Plaintiff must show that this reason is a pretext for unlawful discrimination.  *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007).

There is no dispute that Plaintiff satisfies the first and second elements of her prima facie case of retaliation.  This Court also finds that the third element is satisfied in light of the close proximity between Plaintiff's exercise of her rights under the FMLA, the date Plaintiff was expected to return from her FMLA leave, and her termination.  *See Bryson*, 498 F.3d at 571 (citing *Skrjanc*, 272 F.3d at 314) (finding a causal connection based on the fact that the defendant terminated the plaintiff the day she was scheduled to return to work from FMLA leave).  Defendant therefore bears the burden of demonstrating a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff.

Defendant contends that it lawfully terminated Plaintiff because she was incapable of returning to work when her 12-weeks of FMLA leave expired.  Defendant cannot avoid liability based on this stated reason, however, because there is nothing in the record indicating that it possessed any evidence that Plaintiff was incapable of returning to work when her leave expired at the time that it decided to terminate her.[3]  The only evidence

---

[3] While Defendant attached to its pleadings the Attending Physician Statement that Dr. Arneson prepared following Plaintiff's gallstone surgery, Defendant has offered no

9

relevant in analyzing a FMLA retaliation claim is that evidence within the employer's knowledge *when* it made its decision. *Edgar*, 443 F.3d at 512. This is because the employer's retaliatory motive for taking the challenged action is what makes the action unlawful. *Id.*

Defendant also asserts that its decision to terminate Plaintiff was justified by her failure to return to work when her FMLA leave expired. According to Defendant, pursuant to the FMLA and company policies, Plaintiff's FMLA leave expired October 13, 2005.[4] The Court will accept this date for purposes of analyzing Plaintiff's request for summary judgment. However Plaintiff argues, relying on "the exact reasons stated in *Wilkerson* [*v. Autozone, Inc.*, 152 Fed. App'x 444 (6th cir. 2005)]," that based on statements by her immediate supervisor, Ms. Terry, her FMLA-approved leave extended beyond 12-weeks to October 24, 2005.

Relying on Eleventh Circuit precedent, Defendant argues that an immediate supervisor does not have the ability to extend the FMLA leave time of an employee. (Def.'s Reply Br. at 3, citing *Johnson v. Morehouse College, Inc.*, 199 F. Supp. 2d 1345 (N.D. Ga. 2002).) This holding, however, is contrary to the Sixth Circuit's decision in

---

evidence to suggest that it had the statement in its possession before Plaintiff filed this lawsuit. Defendant did not have Dr. Arneson's October 14, 2005 note releasing Plaintiff to return to work when it decided to terminate her.

[4]In contrast, Plaintiff argues that, pursuant to Defendant's policies, the first three days of her leave were not counted against the 12-weeks allotted under the statute. Plaintiff also contends that she believed a portion of her accumulated sick and vacation leave would be used before the 12-week FMLA clock began.

*Wilkerson*. In that case, the court specifically held that an employer may be equitably estopped from arguing that an employee's FMLA leave ended on a particular date when the employer's representative told the employee that his or her leave ended later.[5] *Wilkerson*, 152 Fed. App'x at 449-50 (6th Cir. 2005) (citing *Kosakow v. New Rochelle Radiology Assoc., P.C.*, 274 F.3d 706, 725-26 (2d Cir. 2001)); *see also Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 336 (6th Cir. 2005) (remanding to the district court to determine whether equitable estoppel barred the defendant from challenging the plaintiff's entitlement to leave based on its claim that the employee's medical certification was insufficient to establish his need for FMLA-qualifying leave where the defendant informed the plaintiff before he went on leave that he was entitled to leave under the FMLA). Plaintiff presents evidence suggesting that her supervisor told her that her FMLA-approved leave extended to October 24, 2005. (Pl.'s Mot. Ex A at 55-56, 78.) This Court therefore finds a genuine issue of material fact with respect to whether Defendant should be estopped from arguing that Plaintiff's leave expired on October 13, 2005.

Moreover, Plaintiff presents evidence to create a genuine issue of material fact with respect to whether Defendant's asserted reason for terminating her is pretextual. The Sixth Circuit has explained Plaintiff's burden of demonstrating pretext as follows:

---

[5]While *Wilkerson* is distinguishable because the person who informed the plaintiff that she had a longer FMLA leave was someone in the defendant's human resources department, this Court believes that it is for the trier of fact to decide whether it was reasonable for Plaintiff to rely on Ms Terry's statements.

11

> Pretext may be established either directly by persuading the trier of fact that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. . . . A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action.

*White v. Baxter Healthcare Corp.*, 533 F.3d 381, 392 (6th Cir. 2008) (internal quotation marks and citations omitted). Plaintiff presents evidence from which a jury could find Defendant's proffered reason for its decision to terminate her insufficient and/or that it was not the actual reason.

More specifically, Plaintiff only was absent one day beyond the date Defendant allegedly expected her to return from her approved FMLA leave. Defendant's Employment Manual provides that a verbal reprimand is the appropriate response to one unexcused absence. (Pl.'s Resp. Ex. P.) Further, Ms. Terry testified that she only would have given Plaintiff a written warning for the one unexcused absence. (*Id*. Ex. B at 39-42.) Finally, Ms. Moss testified during her deposition that it was unusual for someone to be terminated for the reason that Plaintiff was terminated; in fact, she admitted that she could not name anyone terminated for that reason. (*Id*. Ex. C at 36-37.)

In short, the Court finds genuine issues of material fact with respect to whether Defendant had a legitimate, nondiscriminatory reason for terminating Plaintiff and as to whether this reason was a pretext for discrimination. Therefore, based on the record before the Court, the Court cannot conclude as a matter of law that Plaintiff is entitled to

summary judgment on her retaliation claim.

Accordingly,

**IT IS ORDERED**, that Defendant's motion for summary judgment is **DENIED**;

**IT IS FURTHER ORDERED**, that Plaintiff's request for summary judgment in her response brief is **DENIED**.

<pre>                                        s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE</pre>

Copies to:
Marla A. Linderman, Esq.
John J. O'Shea, Esq.